Law Offices
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York  10178
Tel.: (212) 309-6000
Fax: (212) 309-6001
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

JOSEPH ROSE, individually and on behalf      :
of all other persons similarly situated,          :
          :
          :

         Plaintiffs,          :     Civil Action No.: 14-CV-3569
          :

       v.          :     <u>**ELECTRONICALLY FILED**</u>
          :

NORTHWESTERN MUTUAL LIFE        :
INSURANCE COMPANY, NORTHWESTERN  :
MUTUAL INVESTMENT SERVICES LLC,    :
and any related entities,          :
          :

         Defendants.          :

-------------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR RENEWED MOTION FOR SUMMARY JUDGMENT**
<u>**ON THE CLAIMS OF PLAINTIFF JOSEPH ROSE**</u>

 

**MORGAN, LEWIS & BOCKIUS LLP**
Christopher A. Parlo
101 Park Avenue
New York, New York  10178
(212) 309-6000
(212) 309-6001 (facsimile)

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   ARGUMENT ........................................................................................... 2

A.   THE UNCONTROVERTED EVIDENCE ESTABLISHES THAT ROSE
WAS AN INDEPENDENT CONTRACTOR, NOT AN EMPLOYEE ............... 2

1.   Plaintiff Cannot Establish That Northwestern Mutual Exerted Any
Control Or Supervision Over Him ........................................................ 3

2.   Plaintiff Had Autonomy And Worked At His Own Convenience ............ 5

3.   Rose Was Free To Engage In Other Employment ................................... 7

4.   Rose Did Not Receive Any Fringe Benefits And Was Not On
Northwestern Mutual's Payroll ............................................................. 8

5.   Plaintiff Was Not On a Fixed Schedule ................................................. 9

6.   *Hernandez* And *Murphy* Are Distinguishable From The Instant
Case ................................................................................................ 10

B.   EVEN IF PLAINTIFF WAS AN EMPLOYEE, HE QUALIFIES FOR
THE OUTSIDE SALES EXEMPTION ............................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bynog v. Cipriani Grp., Inc.*,
   770 N.Y.S.2d 692 (N.Y. 2003) ................................................................................2

*Chenensky v. New York Life Ins. Co.*,
   No. 07 Civ. 11504, 2010 WL 2710586 (S.D.N.Y. June 24, 2010)........................11

*Claim of Watz*,
   400 N.Y.S.2d 889 (N.Y. App. Div. 1977) ..............................................................9

*Cornelia St., Inc. v. Ross*,
   453 N.Y.S.2d 402 (N.Y. App. Div. 1982) ..............................................................9

*Dixon v. Prospect Mortg., LLC*,
   11 F. Supp. 3d 605, 610 (E.D. Va. 2014) .............................................................12

*Gregory v. First Title Of America, Inc.*,
   555 F.3d 1300 (11th Cir. 2009) .............................................................................12

*Hernandez v. Chefs Diet Delivery, LLC*,
   915 N.Y.S.2d 623 (N.Y. App. Div. 2011) .......................................................10, 11

*Hopkins v. Cornerstone America*,
   545 F.3d 338 (5th Cir. 2008) .................................................................................11

*In re Empire State Towing & Recovery Ass'n, Inc.*,
   912 N.Y.S.2d 551 (N.Y. 2010) ...............................................................................2

*Killion v. KeHE Distributors, LLC*,
   761 F.3d 574 (6th Cir. 2014) .................................................................................12

*Lint v. Northwestern Mut. Life Ins. Co.*,
   No. 09-1373, 2010 WL 4809604 (S.D. Cal. Nov. 19, 2010)..................................12

*Mehtani v. New York Life Ins. Co.*,
   537 N.Y.S.2d 800 (N.Y. App. Div. 1989) ...........................................................8, 9

*Menin v. Tully*,
   422 N.Y.S.2d 519 (N.Y. App. Div. 1979) .............................................................10

*Meyer v. U.S. Tennis Ass'n*,
   No. 11-06268, 2014 WL 4495185 (S.D.N.Y. Sept. 11, 2014) ................................9

*Murphy v. ERA United Realty*,
   674 N.Y.S.2d 415 (N.Y. App. Div. 1998) .......................................................10, 11

ii

*Scott v. Massachusetts Mut. Life Ins. Co.*,
   633 N.Y.S.2d 754 (N.Y. 1995) ............................................................................10

*Sellers v. Royal Bank of Canada*,
   No. 12-1577, 2014 WL 104682 (S.D.N.Y. Jan. 8, 2014), *aff'd*, 592 F. App'x
   45 (2d Cir. 2015) ..................................................................................................9

*Shaw v. Am. Income Life Ins. Co.*,
   No. 11-123, 2012 WL 400703 (N.D. Ind. 2012) ............................................5, 10

*Slote v. Tully*,
   446 N.Y.S.2d 549 (N.Y. App. Div. 1982) ............................................................6

*Stevens v. SimplexGrinnell, LLP.*,
   190 F. App'x 768 (11th Cir. 2006) ......................................................................12

REGULATIONS

29 C.F.R. § 541.203(a).............................................................................................12

I.      **PRELIMINARY STATEMENT**

At the oral argument on Defendants' original motion for summary judgment, Plaintiff's counsel pleaded with the Court for more time to tie Northwestern Mutual into the case – something they claimed they did not know they had to do.  Plaintiff has now had over a year, including six more months of discovery, to try to establish the existence of a relationship with anyone other than Seery or Boylan (who are not named as defendants), and to show that any such *other* entity controlled him and became his employer.  But even with this second chance, more discovery, and a second round of briefing, Plaintiff Joseph Rose ("Plaintiff" or "Rose") still has failed to put forth any facts to establish, or here to raise any triable issue of fact, that Northwestern Mutual – the only Defendant remaining in the case – controlled him.[1]  Instead, he continues to substitute the words Northwestern Mutual in brackets, as "[NWM]," into alleged facts and sentences where the words Seery, Seery Agency, Boylan, College Unit Director ("CUD"), or some other party, originally appeared.  In addition, he resorts to the same tactics from his original briefing (i.e., mischaracterization of facts and documents, material changes to his sworn testimony, and whole paragraphs without any citation).[2]  His newest tactic, in his Opposition, is to tie every statement, action or event to unspecified "Defendants," repeatedly using the plural of the phrase and not identifying the individual or entity to which he is referring, when there is only <u>one</u> singular Defendant left and Boylan and Seery are not named.  *See* Opp., *seriatim*.

When the record is carefully reviewed and applied there is no act of control by <u>Northwestern Mutual</u> with respect to any aspect of Plaintiff's daily life.  Making this vividly

---

[1] As noted in its moving brief, Plaintiff has conceded that he had no basis for naming Northwestern Mutual Investment Services LLC in the action, he has not argued that entity controlled his work or had any relationship him, and he has not opposed its dismissal from the case – leaving only one defendant.

[2] As just one example, the entirety of page 10 of Plaintiff's Opposition contains only two citations, and multiple sentences/paragraphs of alleged facts have no cited support. *See* Plaintiff's Opposition ("Opp.") at 10.

clear, Plaintiff resorts to citing from generic materials on a website that the only record evidence establishes were made available to independent local agencies for their use <u>if</u> they chose to use them.  But Plaintiff presents no evidence that any of these materials were used by anyone at all to somehow control the manner in which he ran his business, much less by Northwestern Mutual. Moreover, Plaintiff disingenuously fails to inform the Court that the witness *he deposed* (during his six-month extra window of discovery) made clear that Northwestern Mutual itself had <u>no</u> insurance agent interns, that the internships were conducted *solely* by independent agencies and that there was <u>no</u> evidence in any of Northwestern Mutual's records (or in any other records) of any involvement by Northwestern Mutual in the Seery Agency's intern program or in Plaintiff's internship.  Plaintiff also does not show the Court the reams of marketing and other material created and used by the Seery Agency for its *own* internship program in which Plaintiff participated.  *See* Defendants' Memorandum of Law In Support of Their Renewed Motion for Summary Judgment ("Defs.' RMSJ") at 15; Affidavit of Christopher Parlo in Support of Defs.' RMSJ  ("Parlo Aff.") at Ex. 10.  Thus, after more than a full year of additional litigation, Plaintiff is left with the unremarkable, undisputed and irrelevant fact that Northwestern Mutual stated on a website that local agencies administered an internship program.  This fact, undisputedly true, does not make Northwestern Mutual Plaintiff's employer.

Importantly, however, even if the Court were to somehow conclude that Plaintiff was an "employee" of Northwestern Mutual, Plaintiff's Complaint still must be dismissed because the undisputed record demonstrates that he was an outside salesman, exempt from the laws on which his claims are based.

## II.   <u>ARGUMENT</u>

### A.   <u>THE UNCONTROVERTED EVIDENCE ESTABLISHES THAT ROSE WAS AN INDEPENDENT CONTRACTOR, NOT AN EMPLOYEE.</u>

Under New York law, certain discrete factors, upon which the parties agree, govern

whether an individual is an employee or independent contractor.[3]  Plaintiff here (seemingly intentionally) makes sweeping, muddled and aggregated allegations about the controlling conduct of Seery, the Seery Agency, Boylan, other individuals and entities and Northwestern Mutual.  When these allegations are untangled, as they must be, all factors weigh in favor of Plaintiff being an independent contractor, and not an employee of Northwestern Mutual.

**1.  Plaintiff Cannot Establish That Northwestern Mutual Exerted Any Control Or Supervision Over Him.**

Because he has absolutely no evidence of any actual contact or interaction with Northwestern Mutual, much less any control by Northwestern Mutual over any of his daily, weekly or even monthly activities, Plaintiff resorts to arguing that Northwestern Mutual created "copious marketing materials and internal training documents" to advertise and promote a "single, unified internship program," and that Northwestern Mutual created College Unit Director and Financial Representative Internship Guidebooks ("Guidebooks") and other alleged materials.  Opp. at 2-3, 5.  However, there is no evidence that anyone from Northwestern Mutual ever showed these materials to Plaintiff, required him to use them, checked if he did so, or otherwise had any interaction with him in any way.  Plaintiff's Opposition also points to no evidence that Northwestern Mutual required any agency, including the Seery Agency, to use any materials, including those he cites.  In the absence of any such evidence the mere presence of these materials on a website cannot be construed as control or supervision over Plaintiff, much less the requisite control needed to make Northwestern Mutual an employer.

Plaintiff's mischaracterization of the facts is exemplified in his contention that "Northwestern Mutual created materials which were provided to Rose during his internship, including checklists of tasks to perform and objectives to meet."  Plaintiff's Local Rule 56.1

---

[3] See, e.g., In re Empire State Towing & Recovery Ass'n, Inc., 912 N.Y.S.2d 551, 553 (N.Y. 2010); *Bynog v. Cipriani Grp., Inc.*, 770 N.Y.S.2d 692, 694-95 (N.Y. 2003).

Counter-Statement of Undisputed Material Facts ("Pl. 56.1") ¶55.  However, there is literally no

evidence in the record that Northwestern Mutual provided anything to him.  Instead, Plaintiff

substitutes the words "Northwestern Mutual" for the "Seery Agency" to identify the source of

the materials he claims to have received.  Opp. at 12-13.  The record is undisputed that

Northwestern Mutual did not require that anything be used, did not monitor or track whether

anything was used, did not follow-up to see if anything was used, and had no idea if the Seery

agency used any materials.  *See* Van Grinsven Tr. at 24:12-16; 41:6-21; 120:9-12.

 Moreover, substantively, even if Northwestern Mutual had required the use of any

materials (and it did not) there is no "checklist" of tasks that had to be performed.  Instead, there

are only common sense suggestions an agent can use to build and run his or her own insurance

business, such as the unremarkable points: obtain a state insurance license, "[m]eet clients on

your own," pass the Series 6 and 63 exams, "[t]hink about expanding your horizons and your

business," "[c]ontinue crafting your business plan," and "[h]ave an organized process for how

[to] do things – a certain way [to] phone [] prospects and a procedure for conducting client

meetings."  Opp. at Ex. J.  Nowhere in these materials did Northwestern Mutual (or Seery or

Boylan or anyone else) dictate how Plaintiff was to generate sales, generate client leads, choose

prospective clients, decide how many phone calls to make on any given day or to whom, or what

his business strategy would be in trying to sell insurance.  *See* Defs.' RMSJ at 12-16.  As detailed

in Defendants' moving brief, the manner and means of Plaintiff's business were controlled by

Plaintiff alone.  *Id*.[4]

 Moreover, Plaintiff conveniently ignores the fact that the Guidebooks repeatedly refer to

the CUD and General Agent – the individuals with whom Plaintiff actually interacted – and not

_____

[4] Plaintiff asserts that he was required to work a fixed schedule, make a certain number of phone calls,
and attend mandatory meetings, but glosses over the fact that if such directives occurred, they came from
the Seery Agency and/or the CUD (Boylan) and not Northwestern Mutual.  Plaintiff provides no evidence
that Northwestern Mutual was aware, let alone mandated, that these alleged requirements were imposed
on Plaintiff.

to Northwestern Mutual.  This is not surprising and it is not disputed.  Plaintiff's, Seery's and Boylan's testimony all confirm that <u>Northwestern Mutual</u> literally *had no involvement in any of Plaintiff's day-to-day work as an insurance agent*.  For example, Plaintiff never met with anyone from Northwestern Mutual, and did not receive any goals, expectations, or requirements from <u>that</u> Company.  Rose Tr. 279:11-15 (Q: ". . . did you ever meet with anyone from Northwestern Mutual in Wisconsin?"  A: "No."); 334:3-5.  This was confirmed by Michael Van Grinsven, who testified that no one from Northwestern Mutual was in contact with or provided training to any college agents.  Van Grinsven Tr. 40:6-7; 41:13-14.

In short, Plaintiff does not, and cannot, point to any directive from <u>Northwestern Mutual</u> requiring him to follow or apply any information contained in general informational materials, or that any such materials controlled him in any way.  Instead, the record is clear and undisputed that <u>Northwestern Mutual</u> did not hire Plaintiff; did not dictate any requirements to Plaintiff; did not monitor Plaintiff's performance; did not control a single minute of Plaintiff's workday; and did not assess, evaluate or review Plaintiff's performance during his time selling insurance.  Those facts confirm that Plaintiff was an independent contractor and not an employee.[5]

## 2. Plaintiff Had Autonomy And Worked At His Own Convenience.

Although admitting repeatedly in his deposition that *he* controlled when and how he worked, Plaintiff now insists that he had to "partner with senior representatives in client meetings."  Opp. at 16-17.  However, Plaintiff does not say Northwestern Mutual imposed this requirement and he cannot change his testimony to avoid dismissal.  Plaintiff testified that there was no mandatory rule that required him to seek out the assistance of a veteran financial representative when consummating a sale.  Instead, "joint work," a common practice throughout

---

[5] *See Shaw v. Am. Income Life Ins. Co.*, No. 11-123, 2012 WL 400703, at *13 (N.D. Ind. 2012) (rejecting claim that plaintiff was employee, finding that plaintiff failed to submit any significant evidence that "AIL itself actually supervised, controlled, or otherwise placed requirements on his performance" and instead relied only on ways the <u>general agent</u> allegedly controlled and supervised him).

5

the insurance industry, simply provided an opportunity for new agents to learn from independent contractor veteran agents during the early stages of their careers.  While such joint work certainly was encouraged, Plaintiff admitted it was by no means a requirement (*see* Rose Tr. 200:18-22 and Boylan Tr. 54:19-55:2), and that when he was out of the office attending client appointments, *nobody* from Northwestern Mutual was supervising or evaluating him.  Rose Tr. 324:4-325:2; 119:21-123:4.  Finally, Plaintiff does not offer even a theory, much less evidence, of how his performing joint work with veteran agents, who he admits are themselves independent contractors, could make Northwestern Mutual his employer.[6]

Plaintiff also now argues that he was an employee because he was required (although he does not say by Northwestern Mutual) to make a certain number of customer calls.  But to do so he must again refute his own testimony that no one, and certainly not any Northwestern Mutual employee, monitored how many calls he made per day, nor verified that he made any calls.  Rose Tr. 130:23-25; 251:6-12, 248:20-24.  Moreover, Plaintiff admitted that his reporting to the CUD the number (and not content) of calls he made was <u>not</u> "controlling" him, as nobody told him who to call, when to call, what to say or asked for reports on the results of the calls.  Rose Tr. 129:9-23; 130:23-25; 251:6-12; 348:17-349:23; 356:10-12.  Indeed, Plaintiff testified that he was responsible for customizing each phone call depending on the needs of the individual and the suitability of the insurance product.  Rose Tr. 215:16-18.  The record is clear that neither

---

[6] Plaintiff also cannot change his testimony that he alone controlled the manner in which he solicited prospective clients (Rose Tr. 304:18-313:25; Seery Tr. 114:17-115:14), and that he chose his own "warm markets," utilized his own sales strategies, and set his own goals without oversight by Northwestern Mutual (Rose Tr. 123:23-124:18; 230:15-23; 298:7-13; 303:12-15; 304:18-313:25), or negate the express terms of his Contract.  *See* Parlo Aff. Ex. 5 at ¶4 ("[a]gent shall be free to exercise his own judgment as to the persons from whom he will solicit Applications and the time, place and manner of solicitation . . . ..").  This autonomy again confirms his independent contractor status.  *See also Slote v. Tully*, 446 N.Y.S.2d 549, 550-51 (N.Y. App. Div. 1982) (agent who controlled manner in which customers were persuaded to purchase insurance was independent contractor).

6

Plaintiff's phone calls nor the manner and means of his business was controlled by Northwestern Mutual; the law does not permit him to now change his testimony to avoid summary judgment.

Finally, Plaintiff's confirmation that he is not seeking compensation for the time period during which he was contracted to sell Northwestern Mutual products while attending college in Poughkeepsie (September to November of 2010) (Opp. at 14 n.2) undermines Plaintiff's entire claim. Plaintiff admitted that his work in Poughkeepsie was exactly the same as it was when he was in Manhattan from May to August 2010. Rose Tr. 259:16-260:8 ("I was just kind of doing what I did in Manhattan."). If Plaintiff was an independent contractor when he sold insurance products in Poughkeepsie; he was every bit the same independent contractor when he sold the same products, in the same way, in Manhattan.

### 3.    Rose Was Free To Engage In Other Employment.

Contrary to his deposition testimony, Plaintiff now claims that he was prohibited from engaging in other employment while selling Northwestern Mutual insurance. Opp. at 20-21. His sole support for this claim is his mistaken interpretation of an "exclusive dealing" provision in the contract he signed. However, this provision did *not* bar him from selling other companies' products, and says nothing of the kind. On the contrary, it specifically recognized the right to sell other companies' products if a customer could be insured at lower premium rates, or where a customer was already insured to a certain limit or presented an unacceptable risk to Northwestern Mutual. In any such circumstance, Plaintiff could recommend and sell the products of other insurers, *including competitors*, to meet a client's needs. Parlo Aff. Ex. 5, ¶6. Rose neither mentions nor disputes any of these facts.

Moreover, the "Exclusive Dealing" provision concerns only the sale of insurance products. As an independent contractor, Rose was, of course, free to engage in other occupations or professional endeavors while selling Northwestern products. Indeed, Seery testified that

agents, like Plaintiff, were able to engage in other, non-insurance-related work and in other insurance sales activities with other companies, *including with competing companies*, as long as securities and regulatory requirements were met.  Seery Tr. 163:5-25.  Plaintiff clearly understood and took advantage of this freedom, working as an independent contractor for Belltower Books during the relevant time period.  Rose Tr. 78:21-24; 231:13-19.  Courts have routinely found that the ability to contemporaneously sell products for other competing insurance companies and/or to engage in other work strongly supports an independent contractor relationship.[7]

In addition, none of the other contractual provisions cited by Plaintiff (Opp. at 14-15), prevented him from engaging in other work, or demonstrate that Northwestern Mutual exercised the requisite control over Plaintiff.  For instance, the sales territory provision allowed Plaintiff to sell insurance products *any place* he chose, in all 50 states, as long as he met licensing and other regulatory requirements in the jurisdiction.  Parlo Aff. Ex. 5 at ¶3.  And, although he now asserts that he was prohibited from hiring assistants, the record is clear that Plaintiff was *never* advised that he was prohibited from doing so.  To the contrary, Plaintiff conceded that he *chose* not to do so because he found it unnecessary at that stage of his career.  Rose Tr. 353:8-17.

### 4.    Rose Did Not Receive Any Fringe Benefits And Was Not On Northwestern Mutual's Payroll.

Plaintiff's Opposition concedes, as it must, that Northwestern Mutual kept no personnel file for him, that he was not on that Company's payroll and that he did not receive any of the fringe benefits that Northwestern Mutual's actual employees received.  Although Plaintiff cites to one case from another district for the general proposition that courts have found these factors "unimportant," courts in this jurisdiction continue to consider, and value, these factors when

---

[7] *See* Cases cited in Defs.' RMSJ at 20 n.8.  *See also*, *Mehtani v. New York Life Ins. Co.*, 537 N.Y.S.2d 800, 802 (N.Y. App. Div. 1989) ("[E]xpress authority to place insurance applications with companies other than New York Life" considered "indicia of independent contractor status . . . .").

determining whether an individual is an independent contractor.[8]  The record is also undisputed that Plaintiff, like all other independent contractor insurance agents, received no payments directly from Northwestern Mutual, and instead was paid (purely on a commission basis and not by salary) through the local agency with which he was independently contracted.  Seery Tr. 95:4-10.[9]

### 5.    Plaintiff Was Not On a Fixed Schedule.

Despite his clear deposition testimony, Plaintiffs goes to great lengths to now argue that he was subject to several "requirements," "mandatory meetings," and "quotas."  In doing so, however, Plaintiff misstates the record and his testimony, and again seeks to substitute the words "Northwestern Mutual" or "[NWM]" for other alleged actors.  First, while Plaintiff contends that he was "required to work a full-time schedule in the office" and relies on Boylan's testimony that there was an *expectation* that college agents work "35-40 hours a week" (Opp. at 15), Plaintiff testified that there was *absolutely no requirement* imposed on him by Northwestern Mutual  that agents work any set number of hours or days per week.  Rose Tr. 130:23-25; 251:6-12.  Moreover, no one from <u>Northwestern</u> <u>Mutual</u> tracked Plaintiff's hours or required him to sign-in or out each day he came into the Seery Agency.  Rose Tr.  228:5-12; 141:6-14; 345:1-5; 345:23-346:12; 334:3-5.  If Plaintiff *chose* to have a schedule, which he does not even claim, he did so on his own, and consistent with the flexibility he enjoyed to schedule his own work time.  None

---

[8] *See, e.g., Meyer v. U.S. Tennis Ass'n*, No. 11-06268, 2014 WL 4495185, at *9 (S.D.N.Y. Sept. 11, 2014) (plaintiffs deemed independent contractors under NYLL because they did not receive fringe benefits from defendant, were not on defendant's payroll, and claimed independent contractor status on income tax returns); *Sellers v. Royal Bank of Canada*, No. 12-1577, 2014 WL 104682, at *8 (S.D.N.Y. Jan. 8, 2014) (holding plaintiff was an independent contractor, citing to his non-receipt of fringe benefits as one factor), *aff'd*, 592 F. App'x 45 (2d Cir. 2015).

[9] *See, e.g., 12 Cornelia St., Inc. v. Ross*, 453 N.Y.S.2d 402 (N.Y. 1982) (real estate broker who was paid commissions upon gross sales considered independent contractor); *Mehtani*, 537 N.Y.S.2d at 802-03 (commission payment one factor deemed to "clearly support the contractual definition of [plaintiff's] status" as an independent contractor); *Claim of Watz*, 400 N.Y.S.2d 889 (N.Y. App. Div. 1977) (individual was independent contractor where he was paid commissions only and no taxes were withheld from his payments other than those imposed by law).

9

of the materials attached to Plaintiff's Opposition dispute this point, including the materials from the Northwestern Mutual website which refer to a "[f]lexible work schedule."  Opp. at Ex. P at 2.

Plaintiff's attendance at brief daily meetings, which Boylan testified lasted no more than "ten minutes" (Boylan Tr. 192:5-11), and which involved only individuals within the Seery Agency and <u>not</u> from Northwestern Mutual, also does not create a genuine issue of fact as to his independent contractor status.  Plaintiff admitted that no one – including Plaintiff – was penalized or suffered any consequences for *not* attending these meetings.  Rose Tr. 348:13-16. Numerous courts have held that even when individuals are required to attend mandatory meetings, this does <u>not</u> preclude a finding of an independent contractor relationship.[10]  Moreover, the evidence is clear, and again undisputed, that no one from Northwestern Mutual was involved in even a single meeting that Plaintiff claims to have been mandatory, or established any type of schedule to which Plaintiff claims to have been bound.  Accordingly, this newly asserted control by Seery and Boylan cannot be attributed to Northwestern Mutual.

### 6. *Hernandez* And *Murphy* Are Distinguishable From The Instant Case.

The two cases cited by Plaintiff concerning "additional factors" in the independent contractor analysis – *Hernandez v. Chefs Diet Delivery, LLC*, 915 N.Y.S.2d 623 (N.Y. App. Div. 2011), and *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 416 (N.Y. App. Div. 1998) – are readily distinguishable.  First, neither case involves insurance agents, who have consistently been found to be independent contractors by courts in this and countless other jurisdictions.  *See* Defs.' RMSJ at 22-23; n. 9.  Second, the level of control exerted by the putative employers in both *Hernandez* and *Murphy* far exceeds any type of control alleged to have been exerted here.

---

[10] *See e.g.*, *Scott v. Mass. Mut. Life Ins. Co.*, 633 N.Y.S.2d 754, 756 (N.Y. App. Div. 1995) ("[T]he fact that plaintiff was compelled to attend regular company meetings and was asked to draw up a job description for her position are not inconsistent with her status as an independent contractor."); *Menin v. Tully*, 422 N.Y.S.2d 519, 520 (N.Y. App. Div. 1979) (insurance agent who attended "weekly sales meetings and periodic educational meetings" and who was required to meet minimum sales quota considered an independent contractor).  *See also Shaw*, 2012 WL 400703, at *8 ("If there are no significant consequences for failing to attend a meeting, then this control is lessened.").

In *Hernandez*, the plaintiff delivery drivers were specifically directed where to deliver, were reimbursed for their mileage, were required to seek approval for any vacation time, and were prohibited from even listening to music while making deliveries.  915 N.Y.S.2d at 625.  Nothing even close to such controls was placed on Plaintiff.  Likewise, in *Murphy*, the indicia of the company's control over the plaintiff real estate agent (requirement to wear a company uniform, to sign in and out of the office, to share all of her leads, listings and commissions with the company, and to answer company telephones) are non-existent in this case.  674 N.Y.S.2d at 416.[11]

## B.       EVEN IF PLAINTIFF WAS AN EMPLOYEE, HE QUALIFIES FOR THE OUTSIDE SALES EXEMPTION.

Summary judgment also is warranted on the alternative ground that if Plaintiff was a Northwestern Mutual employee, which he was not, he qualifies for the outside sales exemption.[12] It is undisputed that Plaintiff's primary duty was sales.  Rose Tr. 154:25-155:8.  He contacted *his* own potential customers, from *his* own individual leads, to try to *sell* them insurance.  *He*, not Northwestern Mutual, received the commission from *his* sales.  Moreover, even if he enlisted the assistance of a veteran agent to help with *his* sales, he has not denied that they were both selling. *See Chenensky v. New York Life Ins. Co.*, No. 07-11504, 2010 WL 2710586 at *3 (S.D.N.Y. June 24, 2010) (holding that agent qualified for outside sales exemption because he pursued sales on an individual basis as opposed to promoting sales generally); *Lint v. Northwestern Mut. Life Ins.*

---

[11] Plaintiff's reliance on *Hopkins v. Cornerstone America*, 545 F.3d 338 (5th Cir. 2008) is also misplaced as the key facts are distinguishable.  For example, plaintiffs in *Hopkins* were primarily responsible for recruiting and managing a team of sales agents and were not agents themselves.  Moreover, they engaged in limited personal sales, were prohibited from operating other businesses, and the company controlled the distribution of the leads upon which the plaintiffs relied.

[12] Plaintiff contends that this issue is beyond the scope of the discovery the Court directed the parties to conduct at the August 4, 2014 Initial Conference.  Opp. at 11.  However, this issue is part and parcel to the larger issue the Court intended to address: *i.e.*, whether Plaintiff's individual claims can proceed *at all*.  Moreover, defense counsel noted at the conference that the outside sales exemption might apply.  Opp. at Ex. F at 6:19-22.  Therefore, this discussion is directly relevant to the Court's threshold question of whether Plaintiff's own claims can survive.

*Co.*, No. 09-1373, 2010 WL 4809604 at * 2-3 (S.D. Cal. Nov. 19, 2010) (finding plaintiff's admission that his job was sales, and that he received commissions on sales of insurance, evidenced that his primary duty was sales).[13]

      Further, Plaintiff's characterization of his time out of the office as "infrequent" does not negate that he testified to meeting clients outside the office, with some appointments lasting "multiple hours."  Rose Tr. 145:13-146:10; 171:11-13; 345:23-346:12.  Although Plaintiff now argues that occurred only 6-8 times during the summer in question (Opp. at 28-29), he overlooks that once it is established (as it is here) that he engaged in sales activity outside the office, his time inside the office in support of and promoting those sales also qualifies as exempt work.  *See* 29 C.F.R. § 541.203(a) ("Promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work").[14] Accordingly, Plaintiff's testimony about his sales activities remains unrebutted, and satisfies the minimal threshold for being engaged in sales outside the office.

Dated:  New York, New York  
       October 7, 2016

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: */s Christopher A. Parlo*  
      Christopher A. Parlo

*Attorneys for Defendants*

---

[13] Plaintiff's cites *Killion v. KeHE Distributors, LLC*, 761 F.3d 574 (6th Cir. 2014), to support his argument that he was not engaged in sales, but *Killion* is inapposite as the plaintiffs' primary duty in that case was restocking store shelves and was not soliciting business.

[14] *See also Dixon v. Prospect Mortg., LLC*, 11 F. Supp. 3d 605, 610 (E.D. Va. 2014) ("The fact that an employee also performs significant work inside the office does not bar the [outside salesman] exemption."); *Gregory v. First Title Of America, Inc.*, 555 F.3d 1300, 1309 (11th Cir. 2009) (finding that all of plaintiff salespersons "efforts were directed towards the consummation of her own sales . . . ."); *Stevens v. SimplexGrinnell, LLP.*, 190 F. App'x 768, 772 (11th Cir. 2006) (affirming summary judgment where sales representative's servicing of existing customer accounts by creating "sales proposals" was outside sales work).